UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------
ABDEL SATTI,

                        Appellant,                     **MEMORANDUM & ORDER**
                                                          17-CV-00683 (MKB)
                        v.                                    17-CV-00684 (MKB)

NECHADIM CORP.,

                          Appellee.

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       On February 3, 2017, Appellant Abdel Satti, proceeding *pro se*, filed this appeal arising from a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* The bankruptcy proceeding involved the estate of debtor corporation 33 Vanderbilt A&P, Inc. (the "Debtor"), of which Appellant is the principal. (*See* 33 Vanderbilt A&P, Inc., No. 16-BK-40569 (E.D.N.Y. Br. filed Feb. 10, 2016) ("Main Case").) During that proceeding, an adversary complaint, together with a motion for a temporary restraining order ("TRO"), was filed on August 3, 2016 by Trustee of the bankruptcy estate Richard J. McCord against Appellant, (*see generally* Adv. Proceeding Compl., Docket Entry No. 1, No. 16-BK-1143 (E.D.N.Y. Br. filed Aug. 3, 2016) ("Adversary Proceeding")), which motion was granted by the Honorable Nancy Hershey Lord on August 5, 2016 and extended periodically thereafter, (*see* Order dated Aug. 5, 2016, Docket Entry No. 4, Adversary Proceeding). Appellant appeals from the Bankruptcy Court's orders granting the Trustee's application for a TRO, and from an order approving the sale of the Debtor's real property located at 1172 Fulton Street, Brooklyn, New York (the "Brooklyn Property"). (Notice of Appeal, Docket Entry No. 1.) For the reasons set

forth below, the Court dismisses the appeal.

   I.   **Background**

      a.   **Factual background**

On February 10, 2016, the Debtor filed a voluntary bankruptcy petition pursuant to Chapter 11 of the United States Bankruptcy Code, signed by Appellant as "President." (*See* Ch. 11 Voluntary Pet., Docket Entry No. 1, Main Case.) The Debtor owned the Brooklyn Property, as well as real property located at 245 West 134th Street in New York (the "Manhattan Property"). (*See, e.g.,* Adv. Proceeding Compl. ¶ 13.) On June 12, 2016, the case was converted to a proceeding under Chapter 7 of the United States Bankruptcy Code, (Order dated June 12, 2016, Docket Entry No. 28, Main Case), and on June 15, 2016, the United States Trustee appointed the Trustee, (Order dated June 15, 2016, Docket Entry No. 29, Main Case). On August 3, 2016, the Trustee filed an adversary action against Appellant, alleging that Appellant (1) improperly continued to operate the Brooklyn Property after bankruptcy had been declared, (2) failed to produce documents necessary for the Trustee to administer the bankruptcy estate, and (3) took various actions to frustrate the Trustee's efforts to discharge his obligations. (*See generally* Adv. Proceeding Compl.) By order dated August 5, 2016, the Bankruptcy Court enjoined Appellant from entering the Brooklyn Property and Manhattan Property. (Order dated Aug. 5, 2016, Docket Entry No. 4, Adversary Proceeding.) Appellant was further enjoined from collecting rents or other monies owed to the Debtor, and from "interfer[ing] with the Trustee's administration of the estate and its assets . . . ." (*Id.*) The Bankruptcy Court scheduled a hearing on the TRO for August 11, 2016. (*Id.*)

Appellant, along with counsel for the Debtor, appeared for the August 11, 2016 hearing, but various subpoenaed witnesses failed to appear. (*See* Minute Entry dated Aug. 11, 2016,

Adversary Proceeding.)  The hearing was adjourned to three subsequent dates between September through December of 2016, but Debtor's counsel and the various witnesses failed to appear on each occasion.  (Minute Entries dated Aug. 11, 2016, Sept. 14, 2016, Oct. 6, 2016, and Dec. 1, 2016, Adversary Proceeding.)

On November 7, 2016, the Trustee moved for an order approving the sale of both properties.  (Mot. to Approve Sale, Docket Entry No. 50, Main Case.)  Mohamed Satti, Appellant's son, (Mohamed Satti Obj., Docket Entry No. 55, Main Case), Pamela Rodgers, Appellant's spouse, (Pamela Rodgers Obj., Docket Entry No. 56, Main Case), and Appellant, (Abdel Satti Obj., Docket Entry No. 57, Main Case), each of whom self-identified as a "part owner" of the Brooklyn Property and Manhattan Property, among others, filed objections to the Trustee's motion.  The objections of both Mohamed Satti and Rodgers stated that they objected because they "did not file a bankruptcy for the above listed properties."  All three objectors claimed that the offering price for each property was below market value.

By orders dated December 9, 2016 and December 12, 2016, the Bankruptcy Court granted the Trustee's motions to sell the Manhattan Property and Brooklyn Property at a public auction scheduled for January 11, 2017.  (Order dated Dec. 9, 2016, Docket Entry No. 61, Main Case; Order dated Dec. 12, 2016, Docket Entry No. 62, Main Case.)  The sale of the Brooklyn Property was confirmed by the Bankruptcy Court on January 24, 2017.  (Order dated Jan. 24, 2017, Docket Entry No. 78, Main Case.)

Appellant challenges the Bankruptcy Court's orders (1) enjoining him from entering onto the Brooklyn Property and Manhattan Property, and (2) approving the sale of the Brooklyn Property.  (Notice of Appeal.)  However, Appellant failed to file an appellate brief in violation of Rule 8018 of the Federal Rules of Bankruptcy Procedure, despite repeatedly being directed by

the Court to do so. (*See* Orders dated Aug. 7, 2017 and Oct. 10, 2017.)

### b. Procedural history

Appellant filed a notice of appeal on February 3, 2017. (Notice of Appeal.) On March 31, 2017, the clerk of court notified all parties that the bankruptcy court record "ha[d] been received or is available electronically" and directed the parties to "follow [the] briefing schedule as set forth in Federal Rule of Bankruptcy Procedure 8018," specifically instructing that "appellant must serve and file a brief within [thirty] days of this notice . . . ." (Notice dated Mar. 31, 2017). On June 9, 2017, the Trustee filed a letter with the Court requesting that the appeal be dismissed for Appellant's failure to file a brief.[1] (Letter dated June 9, 2017, Docket Entry No. 4.) On August 7, 2017, the Court issued an order noting that "Plaintiff-appellant has failed to file a brief in accordance with Rule 8018 of the Federal Rules of Bankruptcy Procedure," and directing Appellant to file a brief "or risk dismissal of the action for failure to prosecute." (Order dated Aug. 7, 2017.) The Court issued a second warning on October 10, 2017. (Order dated Oct. 10, 2017.) Appellant has not complied with either order.

## II. Discussion

### a. Standard of review

District courts have appellate jurisdiction over "final judgments, orders, and decrees" entered in bankruptcy court. 28 U.S.C. § 158(a). On appeal, a district court reviews the legal conclusions of a bankruptcy court *de novo*, and its factual findings for clear error. *Wenegieme v. Macco*, No. 17-CV-1218, 2018 WL 334032, at *2 (E.D.N.Y. Jan. 9, 2018) (citing *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000)). "A finding is 'clearly erroneous' when,

---

[1] The Trustee filed additional letters reiterating his request on February 6, 2018 and February 14, 2018. (Letter dated Feb. 6, 2018, Docket Entry No. 5; Letter dated Feb. 14, 2018, Docket Entry No. 6.)

on consideration of the record as a whole, the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *Bongiovanni v. Grubin*, No. 15-CV-2617, 2016 WL 4059349, at *3 (E.D.N.Y. July 28, 2016) (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168 (2d Cir. 2001)).

### b. Failure to comply with the Federal Rules of Bankruptcy Procedure

Pursuant to Rule 8018 of the Federal Rules of Bankruptcy Procedure, a litigant appealing a decision of the bankruptcy court must file an opening brief within thirty days "after the docketing of notice that the record has been transmitted or is available electronically," unless such time limit is excused or another is specified by order of the district court. Fed. R. Bankr. P. 8018(a)(1). When an appellant fails to timely file a brief, a district court may dismiss the appeal upon a motion made or *sua sponte* after notice is provided. Fed. R. Bankr. P. 8018(a)(4). A district court is not required to dismiss an appeal for failure to file a timely brief, but "should exercise discretion to determine whether dismissal is appropriate in the circumstances." *In re Tampa Chain Co., Inc.*, 835 F.2d 54, 55 (2d Cir. 1987) (citations omitted); *see also In re Residential Capital, LLC*, No. 16-CV-8549, 2016 WL 7477558, at *2 (S.D.N.Y. Dec. 28, 2016). A district court may accept an untimely appellate brief "where the failure to act was the result of excusable neglect." *Carlebach v. Tyrnauer*, No. 15-CV-5610, 2016 WL 5349781, at *1–2 (E.D.N.Y. Sept. 23, 2016) (quoting Rule 9006(b)(1)). However, district courts have dismissed actions for failure to prosecute where an appellant has not filed any brief, has not "litigate[d] the appeal in any manner since filing the Notice of Appeal," and has otherwise failed to communicate with the Court. *FPSDA I, LLC v. Larin*, No. 13-CV-1093, 2014 WL 108419, at *2 (E.D.N.Y. Jan. 8, 2014); *see also In re Bristol*, No. 09-CV-1683, 2010 WL 1223053, at *1–2 (E.D.N.Y. Mar. 24, 2010).

5

Here, Appellant has failed to file a brief in accordance with Rule 8018 of the Federal Rules of Bankruptcy Procedure, and has not prosecuted this appeal or provided any explanation for his failure to do so. This alone is a sufficient basis for dismissal. *FPSDA I, LLC*, 2014 WL 108419, at *1; *see also In re Bristol*, 2010 WL 1223053, at *1–2. However, even assuming dismissal is not warranted under the circumstances, Appellant's challenge would fail for the reasons discussed below.[2]

   c. **Statutory mootness**

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C.A. § 363. The Second Circuit has interpreted this provision to mean that when a sale is not stayed, a rule of "statutory mootness" substantially limits appellate review of sale orders

---

   [2] The Second Circuit has stated that "in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved — a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88–89 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991)). An appellant must therefore "show not only 'injury in fact' under Article III but also that the injury is direct and financial." *Id.* (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 & n.2 (2d Cir. 1988)). Moreover, an appellant does not demonstrate the requisite injury to establish standing solely by virtue of his status as a shareholder of the debtor. *See Freeman v. Journal Register Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010) (dismissing for lack of standing challenge to chapter 11 plan that did not provide for any shareholder recovery, and finding that "the appellant does not satisfy the aggrieved person standard because, as an equity holder, he does not have a pecuniary interest at stake").
   Here, Plaintiff appears to assert standing based solely on his ownership interest in the Debtor, and while his prospects of recovery after the distribution of the Debtor's assets are, at best, unclear based on the record submitted, the Court need not resolve this inquiry because Appellant's challenge is moot.

entered under sections 363(b) or (c) of the Bankruptcy Code to the issue of whether the sale was made to a good-faith purchaser. *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 247 (2d Cir. 2010); *see also In re Motors Liquidation Co.*, 428 B.R. 43, 53 (S.D.N.Y. 2010) ("The Second Circuit, like the majority of other circuits, strictly enforces this so-called statutory mootness rule of section 363(m), such that, 'regardless of the merit of an appellant's challenge to a sale order, a reviewing court may neither reverse nor modify the judicially-authorized sale if the entity that purchased or leased the property did so in good faith and if no stay was granted.'" (alteration omitted) (first quoting *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 105 F.3d 837, 840 (2d Cir. 1997); and then citing *Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.)*, 415 B.R. 77, 85 (S.D.N.Y. 2009))). The Second Circuit has observed that the "traditional equitable definition" of "good faith purchaser," is "one who purchases the assets for value, in good faith and without notice of adverse claims." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (quoting *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985)). "Generally speaking, a purchaser who pays [seventy-five] percent of the appraised value of the assets has tendered value, but where the purchaser is found to have acted in good faith the auction price suffices to demonstrate that the purchaser paid 'value' for the assets." *Id.* (citations omitted). In addition, the "good faith" component of this inquiry is "focused on the purchaser's conduct in the course of the bankruptcy proceedings," and whether the purchaser engaged in "fraudulent, collusive actions specifically intended to affect the sale price or control the outcome of the sale." *Id.*; *see also In re Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997).

Here, the Bankruptcy Court entered an order on December 12, 2016, approving the sale of the Brooklyn Property by auction scheduled for January 11, 2017. (Order dated Dec. 12, 2016.) The Bankruptcy Court's order approving the sale of the Brooklyn Property was entered

7

pursuant to, *inter alia*, section 363(b), and provided that the bidder "is entitled to and hereby is granted, the protections afforded by Section 363(m) of the Bankruptcy Code with respect to the [Brooklyn] Property . . . ." (*Id.*) By auction held on January 11, 2017, the Brooklyn Property was sold. (*See* Trustee Report of Sale, Docket Entry No. 77, Main Case.) Appellant failed to request a stay of the sale in the Bankruptcy Court. After the Trustee filed a report of sale, on January 24, 2017, the Bankruptcy Court entered an order confirming the sale, (Order dated Jan. 24, 2017, Docket Entry No. 78, Main Case). The order dated January 24, 2017 also stated that the purchaser is "entitled to the protection of Bankruptcy Code [section] 363(m)," and that the purchase by the successful bidder "constitute[d] a good faith purchase for fair value within the meaning of Bankruptcy [Code] [section] 363(m) . . . ." (*Id.*)

In light of the foregoing, Appellant's challenge to the Bankruptcy Court's approval of the sale of the Brooklyn Property is moot, and the Court's appellate jurisdiction is limited to the issue of whether the successful bidder of the Brooklyn Property was a good faith purchaser.

There is no basis in the record to disturb the Bankruptcy Court's decision approving the sale. First, the successful bidder paid value for the Brooklyn Property: the closing price of $1,875,000 was well-above the $1,400,000 opening bid. (Trustee Report of Sale ¶ 12); *see also In re Gucci*, 126 F.3d at 390. Moreover, the record lacks any evidence undermining the Bankruptcy Court's finding that the purchase was made in good faith or that the purchaser had notice of any adverse claims. The Bankruptcy Court therefore did not err in finding that the purchase of the Brooklyn Property was made in good faith. *In re Colony Hill Assocs.*, 111 F.3d at 276; *see also Deep v. Danaher*, 310 F. App'x 433, 434 (2d Cir. 2009) (affirming denial of motion to stay sale because "[n]othing in the record indicate[d] that [the purchaser] acted in bad faith in purchasing the property and there is no evidence that [the purchaser] inappropriately

influenced the bankruptcy court's scheduling of the sale").

### III. Conclusion

For the foregoing reasons, the Court dismisses the appeal. The clerk of court is directed to close this case.

SO ORDERED:

    s/ MKB    
MARGO K. BRODIE
United States District Judge

Dated: February 16, 2018
       Brooklyn, New York